UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

RICHARD DEAN STEIN,

                       Plaintiff,                     Case No. 2:16-cv-181

v.                                        Honorable Gordon J. Quist

DAVID LALONDE, et al.,

                       Defendants.

_____/

## OPINION

       This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## Factual Allegations

       Plaintiff Richard Dean Stein, a state prisoner currently confined at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Resident Unit Manager David LaLonde, Deputy Warden D. Isard,

Deputy Warden Connie Horton, Resident Unit Manager M. LaCrosse, Manager of the Grievance Section Richard D. Russell, Grievance Coordinator M. McLean, Warden Jeffrey Woods, Hearing Officer Unknown O'Brien, Hearing Officer Unknown Theut, Hearing Investigator John McCollum, Captain J. Miller, Assistant Resident Unit Supervisor K. Dunton, Corrections Officer D. Rosebohm, Sergeant P. Thompson, Corrections Officer P. Irwin, Corrections Officer Unknown Ortiz, Sergeant Unknown Pawley, Corrections Officer L. A. Livermore, Sergeant W. Henderson, and Sergeant Unknown Ormsbee.

In his complaint, Plaintiff alleges that he arrived at the Chippewa Correctional Facility (URF) on January 28, 2016. Plaintiff had previously been at URF and had informed his Assistant Resident Unit Supervisor and both Inspectors of a smuggling operation that involved an Aramark employee during his prior incarceration. When Plaintiff arrived on January 28, 2016, Assistant Resident Unit Supervisor McDonald was shocked to see Plaintiff and suggested that he lay low. McDonald told Plaintiff that he would talk to the Inspectors.

Plaintiff alleges that on February 19, 2016, he was approached by some prisoners in the unit bathroom, who told Plaintiff that they would kill him if he did not hold an "ounce of weed." Plaintiff left his unit and went to the Annex building during count. Once there, Plaintiff informed officials that he was locking up and refused to go back to his unit. Plaintiff received a class II misconduct ticket for being out of place. Plaintiff was placed in handcuffs and taken to segregation. Plaintiff's defense to the misconduct ticket was that he was threatened by 6 unknown prisoners in the bathroom, who told Plaintiff that he had to hold something for them, "or else." Plaintiff states that he went back to his cell, got soap to wash his hands, and then walked to the control Annex. Defendant Ormsbee elevated the misconduct to a class I. Plaintiff was found guilty of the misconduct by Defendant O'Brien, and was sentenced to 30 days loss of privileges. Plaintiff's appeal was denied by Defendant Russell.

- 2 -

On February 22, 2016, Plaintiff was ordered by Defendant Rosebohm to return to level two custody. Plaintiff refused. Defendants LaLonde and Isard told Plaintiff that if he refused to return to the general population, he would receive a misconduct and remain in segregation. Plaintiff claims that Defendant Isard stated, "I don't know why you['re] back here, and could care less, but you need [to] tell me what's going on." When Plaintiff explained his situation and stated that he would be killed if he returned to general population, Defendants LaLonde and Isard refused to believe Plaintiff. Defendant Isard stated that his story was "bullshit" and ordered Plaintiff to leave segregation or take a misconduct. Plaintiff refused to go to the general population and was taken back to his cell by Defendant Rosebohm, who wrote a class II misconduct on Plaintiff. Plaintiff's misconduct was elevated to a class I by Defendant Thompson in order to revoke Plaintiff's bond and keep him in segregation. Plaintiff was found guilty of a class I misconduct, resulting in 10 days detention and 30 days loss of privileges. Plaintiff claims that his property was not returned to him after the completion of his sanctions.

Plaintiff filed a grievance, which was rejected by Defendant LaCrosse, who summarized the investigation information as follows:

> Per [Resident Unit Manager] LaLonde, the grievant was seen by SCC on 2/22/16. He added, prisoner claims a group of unknown black prisoners surrounded him in the E-Unit bathroom and told him to hold an ounce [of] weed for them or they were going to stick him. Prisoner claims he has no idea who these prisoners were. Says he thinks it's probably related to the threats he received last time he was here. SCC found no evidence that prisoner has been threatened or that his safety is in jeopardy in GP [general population] at URF. PC [protective custody] request denied, release to level 2.

*See* ECF No. 1-1. Defendant LaCrosse then noted that a prisoner shall be classified to protective segregation only if SCC determines that there is a reasonable basis to believe the prisoner needs protection based on a review of the facts provided by the prisoner or, if a hearing was conducted, as found by the hearing officer. *Id.* Defendant LaCrosse concluded that the interview conducted

- 3 -

by the SCC on 2/22/16 found that Plaintiff's claimed need for protection was unsubstantiated based on all the available information.  *Id.*

Plaintiff's step II appeal was rejected by Defendant Horton, who stated, "The interview conducted by SCC [security classification committee] on 2/22/2016 resulted in the prisoner's protection request being unsubstantiated based on all available information at that time." Defendant Horton further stated that Defendants Isard and LaLonde did not violate policy or engage in any inappropriate behavior.  The rejection of the grievance was upheld at step III by Defendant Russell.

Defendant Irwin wrote a class II misconduct ticket on Plaintiff on March 7, 2016, for refusing to return to the general population.  The misconduct was improperly elevated to a class I by Defendant Thompson.  Plaintiff was found guilty on March 10, 2016, by Defendant Theut. Defendant Russell denied Plaintiff's appeal.  On March 20, 2016, Defendant Ortiz wrote a class II misconduct ticket on Plaintiff for disobeying an order to return to the general population.  This misconduct was elevated to a class I by Defendant Pawley.  Defendant Theut found Plaintiff guilty on March 22, 2016, and Plaintiff's appeal was denied by Defendant Russell.  On April 1, 2016, Defendant Livermore wrote a class II misconduct ticket on Plaintiff for refusing to leave segregation.  Defendant Henderson elevated it to a class I misconduct.  Plaintiff was found guilty by Defendant Theut and his appeal was denied by Defendant Russell.

Plaintiff alleges that Defendant Dunton participated in SCC hearings on April 11, 2016, and on April 26, 2016.  Defendant Dunton asked Plaintiff one or two questions, but otherwise was silent while Defendant LaLonde berated Plaintiff regarding his refusal to return to general population.

Plaintiff claims that Defendant McCollum failed to give him the documents he asked for to prepare for this misconduct hearing on April 22, 2016.  Defendant McCollum noted that it was

Plaintiff's fifth misconduct and that he had asked for the hearing packs from his four previous misconduct hearings. Defendant McCollum stated that Plaintiff had requested all the documents from previous misconduct hearings in each of his four prior hearings as well. Defendant McCollum determined that Plaintiff's request was partially duplicative and refused to give Plaintiff copies of documents that he had already received in order to prepare for his fourth misconduct hearing. Plaintiff complains that this denial violated his due process rights.

At some point, Defendant LaLonde had Plaintiff removed from Quarry Unit Segregation and sent to a more hostile segregation unit in Steamboat. Defendant Irwin informed Plaintiff of the move minutes before the 2:00 pm shift change, and stated that he needed to hurry up and pack. Plaintiff asked for another big plastic bag and two small bags, and Defendant Irwin gave him the bags, but continued to insist that Plaintiff hurry. Plaintiff was taken to Steamboat unit by a transporting officer, who told Plaintiff that he must have angered Defendant LaLonde, because the order for the move had been made minutes before shift change. When Plaintiff arrived at Steamboat, the officers were not expecting him. The transporting officer stated, "LaLonde apparently was pissed off at him and moved him outta Quarry Unit to Steamboat." Plaintiff asked about his property and was told that it had to be checked before he could have it. Plaintiff was led to the showers and his handcuffs and dog leash were removed. Plaintiff was strip searched, got redressed, and was taken to a cell at the end of the wing which had mice in it. Plaintiff claims that the move to Steamboat was done after his security classification meeting with Defendants LaLonde and Miller.

Plaintiff claims that the named Defendants ignored his claims that he was in danger and punished Plaintiff for asking for protection by writing misconduct tickets on him. Plaintiff was found guilty of the tickets by Defendant Hearing Officers O'Brien and Theut. Plaintiff's repeated misconduct tickets for refusing to return to the general population resulted in Plaintiff's continued

confinement in segregation and eventual increase in security classification to a level five. When Plaintiff's security classification became a level five, he was transferred to another prison. Plaintiff seeks damages and equitable relief.

### Discussion

I.    <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendants violated his rights when they refused to believe that he was in danger, failed to place him in protective custody and instead placed him in punitive segregation, repeatedly ordered him to return to the general population and punished him for refusing to do so, and increased his security classification level. Initially, the Court notes that Plaintiff fails to make specific factual allegations against Defendants Horton, LaCrosse, Russell, McLean, and Woods, other than his claim that they failed to conduct an investigation in response to his grievances or to properly supervise their subordinates. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  Plaintiff has failed to allege that Defendants Horton, LaCrosse, Russell, McLean, and Woods engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

In Plaintiff's complaint, he alleges that Defendants Theut and O'Brien are hearing officers and that they improperly found him guilty of several misconduct tickets.  Defendants Theut and O'Brien are hearing officers whose duties are set forth at Mich. Comp. Laws § 791.251 through § 791.255.  Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections.  *See* Mich. Comp. Laws § 791.251(e)(6).  Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed.  *See* MICH. COMP. LAWS § 791.252(k).  There are provisions for rehearings, *see* Mich. Comp. Laws § 791.254, as well as for judicial review in the Michigan courts.  *See* Mich. Comp. Laws § 791.255(2). Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges.  *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988).  As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers.  *Id.*; *and see Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights). Therefore, the Court concludes that Plaintiff's claims against Defendants Theut and O'Brien are properly dismissed.

Plaintiff claims that Defendants did not believe his claim that he was in danger and placed him in segregation for being out of place and for refusing to return to the general population. Plaintiff also claims that he received several misconduct tickets for refusing to house in the general

population.  Plaintiff asserts that he did not receive fair hearings on the misconduct tickets in violation of the Fourteenth Amendment.  A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest.  In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior.  The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison.  But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest."  But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct convictions resulted in any loss of good-time credits, nor could he.  The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[1] for prisoners convicted of crimes

---

[1] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system.  Mich. Comp. Laws § 800.33(5).

occurring after April 1, 1987.  In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board.  *Id.* at 440.  Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement.  355 F. App'x at 912; *accord, Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011);  *Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011).  In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits.  *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectable liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation.  *See Sandin v. Connor*, 515 U.S. 472 (1995).  As noted above, Plaintiff claims that he was confined in segregation as a result of continually receiving misconduct tickets for refusing to house in the general population.  However, Plaintiff has not identified any significant deprivation arising from his convictions.  Unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails.  *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004).

Plaintiff also claims that Defendants violated his rights when they increased his security classification from level two to level five.  The Supreme Court has held that a prisoner does not have a protected liberty interest in the procedures affecting his classification and security

because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91(6th Cir. 1995), the Sixth Circuit applied the *Sandin* test to the claim of a Michigan inmate that the mandatory language of the MDOC's regulations created a liberty interest that he receive notice and hearing before being placed in administrative segregation. The court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Id; see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, plaintiff cannot successfully claim that his due process rights were violated because, "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Moreover, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. *See, e.g.*, *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003) (holding that prisoner had no constitutional right to be held in a particular prison or security classification); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (same); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label as a "homosexual predator" because he did not have a constitutional right to a particular security level or place of confinement). Because Plaintiff does not have a constitutional right to a particular security level or classification, he fails to state a claim.

- 11 -

Liberally construing Plaintiff's complaint, it appears that Plaintiff is asserting that misconduct tickets were in retaliation for his request for protective custody. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The request for protection/investigation report, which is attached to the complaint, notes that Plaintiff has a history of protection requests at URF and that there was no video footage of the incident. The SCC review and decision section states:

> Prisoner cannot or will not provide any info regarding the prisoners that allegedly threatened. Prisoner's claims cannot be verified. There is no evidence that prisoner has been threatened or that he cannot safely lock in GP at URF. Request denied.

*See* ECF No. 1-1, PageID.75.

Plaintiff was found guilty of being out of place on February 26, 2016. According to the hearing report, Plaintiff claimed that after he was threatened, he ran. However, when Plaintiff was asked he said that he first returned to his cell, got soap to wash his hands, and walked down the hallway. When the officer asked where he was going, he said to "lock up," and left the unit. *See* ECF No. 1-1, PageID.73. The reasons for the guilty finding were given as:

> Prisoner Stein was outside of his cube and unit and in the control center annex during count without staff authorization on 2-19-16 at

2102 hrs. a prisoner is not allowed in the control center annex without staff authorization nor is he allowed outside of his cube without staff authorization. Prisoner Stein's statement is not believed because if he was truly threatened he would have not gone back for soap or walked by the unit officer as he admits he does but would have instead immediately reported to the unit officer (which is a place of safety) and reported he was just threatened in the bathroom. Also he never even reported it in the control center but said I am locking up so go ahead and write me tickets, which if he wanted protection and was in fear as he claims he would have reported to staff the threat immediately. Finally, today is the first time he claims he was in fear for his safety and if he truly was he would have wanted his statement investigated. The Officer is clear and factual in his statement and is found to be credible. The charge is upheld.

*Id.*

Plaintiff also attaches a copy of the March 10, 2016, hearing report, which states:

Prisoner Stein was given a direct and reasonable order on 3-7-16 at 0645 hrs by the reporting officer. The order was to come to the door and chain up to go to G.P. Prisoner Stein heard and understood the order because he stated, no thanks. Prisoner Stein voluntarily failed to follow the order and did not come to the door and chain up to go to G.P. Prisoner Stein is not believed in his statement the order is unreasonable because he gives no names of anyone who has threatened him and his request for protection was denied by SCC and there was no credible evidence to support his request for protection. The order is not unreasonable because compliance with the order would not have created a significant risk of serious harm to the prisoner's physical well being, the order did not conflict with a previous order given to the prisoner and he is physically able to comply with said order.

*See* ECF No. 1-1, PageID.84.

The Court notes that a prisoner's claim that he was falsely accused of a major misconduct is barred where there has been a finding of guilt. *See Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013) (holding that a factual finding in a major misconduct proceeding has preclusive effect and is not subject to challenge in a § 1983 action). "A finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'" *See Burton v. Rowley*, 234 F.3d 1267, *2 (6th Cir. 2000) (unpublished) (quoting *Henderson v. Baird*,

- 13 -

29 F.3d 464, 469 (8th Cir. 1994)).  *See also Annabel v. Frost*, No. 14–10244, 2015 WL 1322306, at *5 (E.D. Mich. Feb.17, 2015) report and recommendation adopted, No. 14–10244, 2015 WL 1510680 (E.D. Mich. Mar. 30, 2015) (noting that the checkmate doctrine has been involved in sixteen unpublished Sixth Circuit opinions).

As noted above, Plaintiff was initially found guilty of disobeying a direct order after a hearing on February 26, 2106, and again on March 10, 2016.  During the hearing, the Hearing Officer specifically found that there was no evidence to support Plaintiff's claim that he would be in danger if he was confined in the general population.  Therefore, Plaintiff's assertion that the misconduct tickets were retaliatory fails to state a claim.

Nor has Plaintiff stated a claim under the Eighth Amendment.  Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment.  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care.  *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984).  To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to the Plaintiff's risk of injury.  *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988).  While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack.  *Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242-43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.")

An Eighth Amendment claim comprises objective and subjective components:  (1) a sufficiently grave deprivation and (2) a sufficiently culpable state of mind.  *Farmer v. Brennan*, 511 U.S. 825, 834 1977 (1994); *Woods v. LeCureux*, 110 F.3d 1215, 1222 (6th Cir. 1997).  A prison

- 14 -

official cannot be found liable unless the official has acted with deliberate indifference; that is, the official must know of and disregard an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837; *see also Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (deliberate indifference standard applies to all claims challenging conditions of confinement to determine whether defendants acted wantonly). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Farmer*, 511 U.S. at 837. Thus, the mental state required for an Eighth Amendment claim is not actual intent, but something close to common-law recklessness. *Hubbert v. Brown*, Nos. 95-1983, 95-1988, 96-1078, 1997 WL 242084, at *5 (6th Cir. May 18, 1997) (relying on *Farmer*, 511 U.S. at 836 n.4.

As noted above, the February 26, 2016, hearing report noted that "today is the first time [Plaintiff] claims he was in fear for his safety and if he truly was he would have wanted his statement investigated." *See* ECF No. 1-1, PageID.73. In addition, the March 10, 2016, hearing report stated that the Security Classification Committee had found no credible evidence to support Plaintiff's request for protection. *Id.* at PageID.84. It is clear from the record provided by Plaintiff in this case that Defendants did not believe that Plaintiff was in any danger. Therefore, they did not act with deliberate indifference to a known substantial risk of serious harm. Accordingly, Plaintiff fails to state a claim under the Eighth Amendment.

Finally, Plaintiff appears to be claiming that he was deprived of his property in violation of his right to due process. This claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation

of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's claim regarding the loss of his property will be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  October 28, 2016                     _____/s/ Gordon J. Quist_____
                                                  GORDON J. QUIST
                                             UNITED STATES DISTRICT JUDGE